**UNITED STATES of America,**
**Plaintiff,**

v.

**Carmi Richard RUSHLOW,**
**Defendant.**

**Crim. No. 74–830.**

United States District Court,
S. D. California.

Dec. 9, 1974.

Harry D. Steward, U. S. Atty., Stephen G. Nelson, and Thomas M. Coffin, Asst. U. S. Attys., San Diego, Cal., for plaintiff.

Frank M. Mangan, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant.

## MEMORANDUM OPINION

GORDON THOMPSON, Jr., District Judge.

On April 22, 1974, defendant Rushlow entered a plea of guilty to a charge of escape from custody, in violation of 18 U.S.C. § 751. On May 6, 1974, the district court sentenced the defendant to the custody of the Attorney General for a term of five years, but suspended the execution of the sentence and placed him on probation for a corresponding period.

On October 2, 1974, the court revoked defendant's probation for failing to report to his probation officer. On the same date, however, the court reinstated defendant's probationary status.

On October 31, 1974, defendant Rushlow's northbound vehicle was stopped at the San Clemente, California checkpoint, operating under the authority of an area-wide inspection warrant, and he was charged with the violation of 8 U.S.C. § 1324(a)(2). It is alleged that the defendant was apprehended transporting four illegal entrant aliens, one

riding on the passenger side of the vehicle and three others concealed in the trunk.

Defendant Rushlow urges that the stop of his car at the San Clemente checkpoint constituted an unlawful search and seizure, and the evidence seized as a result of the stop must be suppressed at the defendant's probation revocation hearing.

■ The primary objective of the exclusionary rule is the deterrence of unconstitutional searches and seizures by removing the incentive for such unlawful conduct. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However, in Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960), the Supreme Court noted, "there is another consideration—the imperative of judicial integrity." The court elaborated, setting forth a passage from Mr. Justice Brandeis' dissenting opinion in Olmstead v. United States, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928).

In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously . . . . If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.

Defendant Rushlow contends that by condoning the use of illegally seized evidence the court becomes a party to the unlawful conduct.

Although deterring illegal searches and seizures and preserving the integrity of the judiciary are laudable objectives, the exclusionary rule is not limitless. The rule has not been interpreted to proscribe the admission of illegally seized evidence against any person for any purpose.[1]

In Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971), the court condoned the use of statements, inadmissible against the defendant in the prosecution's case in chief, for impeachment purposes, stating:

Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.

Similarly, the court has refused to extend the exclusionary rule to codefendants whose rights were not violated by the illegal search but by the introduction of damaging evidence. Alderman v. United States, 394 U.S. 165, 171–172, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). In reaching this conclusion, the court noted that the incremental benefits resulting from a further extension of the exclusionary rule would not justify the accompanying encroachment on the fact-finding processes. Maintaining the integrity of the judicial system did not warrant the suppression of illegally seized evidence against codefendants and coconspirators aggrieved solely by the introduction of such evidence.

In its recent opinion, United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Supreme Court refused to extend the exclusion-

1. A probationer aggrieved by an unconstitutional search and seizure is not without a remedy. In United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed. 2d 561 (1974), the Supreme Court cited Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), as authority for the proposition that the exclusionary rule was fashioned to deter future unlawful conduct, "not to redress the injury to the privacy of the search victim." But, an individual on probation does have an interest in preventing unreasonable governmental intrusions into his privacy. He may seek the exclusion of illegally seized evidence in a criminal prosecution against him. Mapp v. Ohio, *supra.* Additionally, he may be entitled to bring a cause of action for damages to "redress the injury" to his privacy. Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

ary rule to grand jury proceedings. The court concluded that allowing a grand jury witness to invoke the rule would unduly interfere with the grand jury process to achieve an insignificant deterrent effect on police misconduct. The court reached this conclusion by balancing the potential injury to the grand jury process against the benefits to be derived from an application of the exclusionary rule.

■ Defendant Rushlow contends that a similar balancing requires that the exclusionary rule be applied to probation revocation hearings. Probation revocation is a matter entrusted to the sound discretion of the district court. In considering revocation, the court must be reasonably satisfied that the conduct of the probationer does not meet the requirements established by the conditions of probation. Klier v. Wainwright, 345 F.Supp. 947 (S.D.Fla.1971); United States v. Bryant, 431 F.2d 425 (5th Cir. 1970).

■ However, being on probation does not deprive the probationer of his basic constitutional rights, including protection from illegal searches and seizures. United States ex rel. Lombardino v. Heyd, 318 F.Supp. 648, 650 (E.D.La.1970); see, United States v. Hallman, 365 F.2d 289, 291 (3rd Cir. 1966); Brown v. Kearney, 355 F.2d 199, 200 (5th Cir. 1966).

A probation revocation proceeding is concerned with the rehabilitation of those placed on probation as well as the protection of society. In deciding whether to extend the exclusionary rule to probation revocation proceedings, the court must weigh the benefits that may accrue from such an application of the rule against the needs of and potential injury to the probation system.

In United States v. Allen, 349 F.Supp. 749 (N.D.Cal.1972), the court was reluctant to extend the exclusionary rule to probation revocation hearings. The court observed:

. . . [T]o burden revocation proceedings and possibly other aspects of the probation system with technical procedural and evidentiary rules similar to those required at the pre-trial and trial phases of our criminal justice system would be counter-productive, compelling a substantial redirection of probation's limited manpower away from important supervision and counselling services. *Id.* at 754.

■ An examination of the needs of the probation system and the rationale behind the exclusionary rule suggest that an extension of the exclusionary rule is unwarranted at this time. However, should the facts suggest that a probationer is the object of constant police harassment, the need for deterring such misconduct would justify such an extension of the rule. *See,* United States v. Brown, 488 F.2d 94, 95 (5th Cir. 1973).

Assuming, *arguendo,* that the stop of the defendant at the San Clemente checkpoint was unlawful, the need for deterring unconstitutional searches and maintaining the integrity of the judiciary is satisfied by the suppression of illegally seized evidence in criminal prosecutions. The added deterrent value of applying the exclusionary rule to a probation revocation proceeding is, at best, minimal.

Absent evidence of police harassment or misconduct designed to elicit a probation violation, this court will not apply the exclusionary rule to a probation revocation hearing.